Good morning, Mr. Kaler. You can proceed. Good morning, Your Honors. Stephen Kaler on behalf of Lawrence Denard. May it please the Court. I'd like to reserve three minutes for rebuttal, please. All right. Your Honors, the California Court of Appeals made two fatal errors in this decision denying the appeal and habeas petition of Mr. Denard. The first was an error of law. The California Court of Appeals interpreted the Brady right in a cramped manner that ended that right at the jury's verdict. And that was a violation of clearly established Supreme Court law. Brady itself is clear that the Brady right applies to both guilt and punishment. The Brady right extended past the jury's verdict, past the motion for new trial, to sentencing. And it is undisputed that the second text involved in this case was sent before sentencing of Mr. Denard. It's my understanding that neither of the texts was, at least there's no evidence, that either of the texts were known to the prosecuting team until after everything in the trial had concluded. Is that incorrect? We don't know, Your Honor. Well, it's your burden. If you're trying to overturn this, you've got to show that they knew. And I don't find anything in the record that says that they did. Is that right? That is correct, Your Honor. And the Supreme Court says we can't consider post-conviction evidence. So how can we help you on this? I mean, I don't question the racist nature of these. That is pretty self-evident. But if the argument that you have is that the prosecutor failed to provide Brady evidence when these were texts that were sent to private people who didn't discuss them with anybody until after the whole procedure was done under the case law that governs us, we can't help you, can we? You can, Your Honor. How? First, I'd like to thank you for acknowledging the racist nature of those texts. That is an important thing. That's just my personal opinion, OK? I understand, Your Honor, but it's important to me and it's important to my client as well. So I appreciate that. Your Honor, the court can and should help my client by invoking Gonzales v. Wong and sending this case back for further evidentiary findings in the state. This is factually indistinguishable from that case. What about Cullen versus Penholster? Your Honor, that case, Gonzales, came out after Penholster. And this court realized that there were serious concerns raised by the factual issues before the Ninth Circuit. And after Penholster, this court said the appropriate course would be to send it back and let the state court make, as a question of first impression, those factual findings. And that honors AEDPA, because that allows the state, in the first instance, to make those findings. But with respect, I wrote Penholster for our court, so I'm pretty familiar with it. As an en banc situation, this man was horribly treated by his lawyers. And Justice Thomas said in Penholster, basically, we don't care, because the evidence that you cite was not available to and presented to the trial court. You're out of luck. Now, you're asking us to order a new evidentiary hearing. That's the very thing that Penholster says we can't do. You cite a subsequent case. Why do you think that allows you to have an evidentiary hearing at which new evidence, not previously available to the court when the trial was held, that that could now occur? What's your authority for that? Gonzales. Because, Your Honor, in Gonzales, this court dealt with exactly the situation that's before it now, deeply disturbing facts that arose conceitedly after the state litigation. And that was after Penholster. And you think Gonzales overrides Penholster? No. I'm sorry, Your Honor. No, with respect, I believe it is consistent with Penholster. Because the court did not grant relief in Gonzales by any stretch of the imagination. The Ninth Circuit in Gonzales said, we are deeply disturbed by these facts. There is a possibility of a meritorious claim. In light of that possibility, the equitable approach would be to send it to the state, and that honors AETA. And I understand the court's concern about an evidentiary hearing before the district court. I'm moving to a second remedy, which is to go back before the state, invoke Gonzales, send Mr. Denard back to the state, and allow the state to address it in the first instance. Perhaps there will never be any showing that the district attorney was aware of those texts at the time of the trial, in which case Mr. Denard will lose. But it's all new evidence, and it's a new hearing. It is not a new hearing in the district court. It is a new hearing in the state, just as it was. Oh, I understand that. But it is what you're doing, which in my understanding is contrary to Penholster. When you have an AETA situation, we review what the state court did based upon the evidence that was available to the state court at the time of the initial proceeding. My understanding of what you're saying is that Gonzales says, not a problem. You can go back to the state court, and you can do exactly what Penholster said you couldn't do, i.e. hold a new hearing, interview everybody in the prosecutorial office, check the time of the texts, and then basically retry the case based upon what those messages did to what the jury decided. Isn't that what you're arguing? Precisely. And I think that this panel must acknowledge that that is currently the law in the Ninth Circuit. After Gonzales. I don't. I want you to help me with Gonzales. By the way, who wrote Gonzales? Your Honor, I know that Judge Clifton. And it was post-Penholster. And I think that I will concede that I do not read Gonzales as saying it is mandatory that this court must remand the case to the state. That I will concede. You're saying it's discretionary? I believe it is discretionary after Gonzales. I concede that. Because there was a case, and I'm sorry to escape me at the moment, but there was a post-Gonzales case where the district court declined to do so. I believe it was Ayala when there was an evidentiary hearing before the district court. But it is, I think, a fair reading of the law in the Ninth Circuit that this court does have that power. And it should invoke that power. And if the state court finds that there's insufficient evidence, so be it. May I reserve the rest of my time for rebuttal? Yes, you may. Thank you. Thank you. Good morning. May it please the court, Michelle Swanson on behalf of Respondent Apley. I'm going to address the Gonzales case first. This case is distinguishable from Gonzales. Unlike in that case, petitioner in this case did not receive Brady material from the prosecution during federal habeas proceedings. The text in which petitioners line on were presented to the state habeas court. The evidence regarding the date of the first one was within the possession of petitioner's counselor during state habeas proceedings. That evidence existed, and the state habeas counsel could have presented that date to the state habeas court and did not. That is why this case is completely different from Gonzales. Can I ask you just to clarify the record on that point? Wasn't it during the state habeas proceedings, the date of the text was known to be post-trial, but if you were to peek at the Gantt documents, it was actually in the middle of trial? That's correct. So had the prosecution been aware of it, it should have disclosed those racist comments, correct? Correct. OK. So when were these comments discovered? When the police department discovered them when Sergeant Gantt reported them in August of 2014, which was beyond trial and beyond sentencing in this case. And that's what the state habeas court found, was that the earliest possible time the prosecution could have known about them was when they were reported to the Oakland Police Department. The district attorney's office submitted a response to state habeas counsel's Brady request and said that they had no Brady material with respect to Lieutenant Jones. They also submitted a declaration in the state habeas court saying that they had no Brady material, again, confirming they had no Brady material regarding Lieutenant Jones. There is no evidence in this case that the prosecution ever knew about these texts. But the earliest possible moment they could have was when it was reported to the police department. Is there any allegation by the petitioner in this case to the contrary, saying that they did know during the trial and they didn't disclose it? There's no evidence. They have submitted no evidence. So it's conjecture? Yes. When did they first reveal this? Was it after the whole trial and the sentencing, or was it at some point in between? Well, what happened was state habeas counsel, some news articles came out about the texting scandal in 2016, which is when petitioner's appeal was pending. And state habeas counsel discovered these news articles. And he presented this evidence of these newscasts to the DA's office and requested that they turn over any materials that they had regarding the texting scandal. And the DA's office responded that they had no knowledge and had no such materials in their possession. That's how it came out. During the appeal? During the appeal, yes. That's correct. The only question before this court is, under AEDPA, whether the state court's opinion was objectively unreasonable based on the record before it. And I laid out the various reasons why it was not unreasonable in my brief. Before petitioner could get an evidentiary hearing, he'd have to show that the state court's decision was unreasonable. And he can't make that showing in this case. So we would ask that the court affirm the district court's denial of the petition. And unless there are any other questions, I am prepared to submit the matter. Thank you, counsel. Judge Smith, I think you appropriately focused on the concerns about going back to the state on the issue of the timing of the text. But I would also note that there was a fundamental legal error in the California Court of Appeal that has not been addressed at all by my opponent. And that alone is sufficient basis to go back, because the California Court of Appeals  ends at the end of the first quarter. And I think that's a good point. It's a jury verdict. Let's say it ends, none of this was discovered until after sentencing, right? And indeed, when the appeal in the state was underway, right? Correct. So even though it was incorrect about the jury, it doesn't matter. Because nobody knew anything, according to what the record shows, until after the case was on appeal to the state. So even though it's a matter of law, harmless, because it didn't hurt anything, right? Well, Your Honor, when you said no one knew anything, the defense didn't know, because it was not listed. Neither did the prosecutor's office. The police did, the ones that were involved in the text issue. But my point is that, according to the record, the prosecutors knew none of this during the trial. They didn't know at the time the jury was impaneled. They didn't know it in sentencing. Didn't come to light until after there's an appeal begun before the state on direct appeal. Is that correct? That is a correct summary of the current record. However, in the Posten litigation, the district attorney filed declarations saying they did not have it during a time period that was different than the time period in the Dennard case. And it's of concern that Posten, which is an almost identical case, had the opportunity to develop that fact. Mr. Dennard never has. And there were many, it wasn't just Mr. Gant, there were many policemen that received these texts. I believe it's over a dozen. And so it is not encouraging. Well, again, with respect, I mean, I know you've got a good job to do for your client. I get that. But again, let's say 100 police officers knew that. If nobody in the prosecutor's office knew about it, and they're the ones that have the responsibility to produce Brady material, how can you fault that? We've not had an opportunity to fully determine that fact. Well, that's your argument to have a new hearing. Precisely. Which is a pinholster problem from my perspective. Well, I think the Gonzales results are wrong. I understand that. That's your view. And I will end on that request. Thank you, Your Honor. Thank you, counsel. Dennard v. Robertson is submitted. And we will.
judges: Siler, WARDLAW, SMITH